[No. 7440.]

Hill v. Lofgren-Harris Mercantile Co. et al.

Specific Performance—*Contract Involving the Rights of One Not a Party Thereto*—A contract contemplating the exchange of lands for a stock of merchandise of which a third person is rightfully in possession, and so far as appears is entitled to continue in such possession, cannot be specifically enforced.

*Error to Weld District Court.*—Hon. Neil F. Graham, Judge.

Mr. Albert L. Moses, for plaintiff in error.

Mr. R. G. Strong, for defendants in error, (except Thompson).

Mr. JUSTICE MUSSER delivered the opinion of the court:

In the court below, the plaintiff in error filed his complaint in February, 1911, against the defendants in erorr. A general demurrer was sustained to the complaint and the action dismissed. The action of the court in sustaining the demurrer is brought here for review. The following are, in substance, the allegations of the complaint, which can in any way, proximately or remotely, be material:

In April, 1910, Lofgren and Harris, partners, entered into a contract with Thompson, wherein it was provided that he was to take possession of the stock, fixtures and book accounts of the company and carry on the business as though it were his own for such reasonable time as might be necessary to clear it of debt. He was only to purchase such merchandise as was necessary to keep up the staple lines, and was not to materially increase the stock. He was to advance from his own funds such an amount of money as might be necessary to pay the debts of the company listed in the contract, as they were demanded. Out of the collections and receipts of the business he was to repay himself such money as he might advance, and pay the remainder of the listed debts, if any, and necessary expenses and bills incurred in carrying on the business. He was to receive as compensation for the money advanced by him and for his services an amount equal to twelve and one-half per cent. of the money paid out by him for the firm, and twelve and one-half per cent. of the market value of the assets remaining on hand after the listed debts were paid, and the stock was ready to be disposed of or turned over to the owners. Thompson was to retain the possession and control of the business and assets until all the listed debts were paid, and he was repaid the advances of his own money. His interest in the business was to be the amount he advanced, and his compensation. All other values in the stock and book accounts were to revert to the company, but this reversion was not to take place until Thompson had repaid himself out of the business for his advancements. So that, at the time the

value was to revert, Thompson's interest would be the amount of his compensation. At that time, it is not clear what was to be done with the stock. It was to be disposed of or turned back to the owners. There was a provision for an arbitration of the value of the fixtures and accounts at the time the stock was to be disposed of or returned to the owners, in case of a disagreement as to such value in fixing Thompson's compensation. Under this contract, Thompson took possession of the business, stock and fixtures, and from thence to the commencement of the action carried on the business, a period of about ten months. After several months, for some reason not disclosed, the partners became dissatisfied with the manner in which Thompson was conducting the business. They could not obtain from him any definite statement as to the amount of stock on hand, or the amount due him under the contract, or the condition of the business. About this time, the partners entered into negotiations with Hill, who was the owner of a tract of land in Kentucky, which culminated in an offer, accepted by Hill, to sell to the latter, at the actual cost price, the stock of merchandise and fixtures referred to in the contract with Thompson. The invoice was to be taken by three persons to be selected. The partners were to accept, in payment for the stock of merchandise, land in Kentucky at $4.00 per acre. Hill was to furnish an abstract showing good title in him and he was to pay Thompson whatever the latter might be entitled to under his agreement with the partners, and, in the language of the accepted offer, Hill was "to be repaid such sum as he may pay to the said Thompson hereunder by a note signed by the undersigned (Harris and Lofgren) and secured by a mortgage upon the lands above described." Hill was to pay all expenses necessary to get possession of the stock and to bring Thompson to an accounting. As soon as this offer was made and accepted, Hill went to Kentucky and procured an abstract of the lands and tendered it to Lofgren and Harris. They refused to accept or to comply with their agreement in any way. He then called upon

Thompson and endeavored to obtain some information as to the amount of stock on hand and as to what, if any sum, Thompson claimed was due him, but Thompson refused to make any statement as to the amount due him, or as to any matter connected with the business. Thompson gave him the privilege of going into the store and making an estimate of the value of the stock, but refused to permit an invoice to be taken. Hill was unable to obtain any definite statement from the partners or Thompson as to the amount due Thompson. Lofgren was about insolvent. Harris might have been able to have responded in damages to some extent, but the complaint says he might not be held liable for damages. The land was worth $4.00 an acre, and Hill stood ready at all times to perform his part of the contract and convey the land. The complaint prayed for the appointment of a receiver for the assets of the business; that the receiver should take a complete inventory of it, and that an accounting be had between Thompson and the other defendants to ascertain what amount was due Thompson; that Hill be permitted to pay that amount; that Lofgren and Harris be compelled to transfer and assign to Hill the stock of merchandise and fixtures after the settlement is made with Thompson, and that they be required to execute and deliver to Hill their promissory note for whatever amount it was necessary for him to pay Thompson.

It is to be seen that the action set forth in the complaint involved the taking of the stock and business away from Thompson by force of a contract between Hill and the others with which Thompson had nothing to do. When Hill and the partners entered into the agreement to exchange the stock for land they knew that without Thompson's consent the stock could not be delivered until the time had arrived, when, under Thompson's contract, the stock was to be disposed of or be returned to the partners. Lofgren and Harris could not maintain an action against Thompson to account to them or to recover the stock or its value until that time had arrived, and certainly their complaint in such an action would have to con-

tain allegations showing that the business had reached the condition in which it was to be when the time for accounting arrived. The vendee, or, as in this case, Hill, who seeks to be made their vendee, can be in no better position than the partners themselves. Assuming, but not deciding, that the action in the form it was attempted might have been maintained under certain circumstances, it could not be maintained under the circumstances outlined in the complaint. There was no allegation, on information and belief or otherwise, that all the listed debts had been paid; that Thompson had been repaid all the money he had advanced; that the amount due him at the commencement of the action would include all the compensation he might earn under the contract. He was to advance money to pay the debts as demanded and was to receive as compensation a certain percentage of all money paid out by him for the firm. There is nothing alleged to show that payment of the debts had been demanded and that all the money had been advanced that was necessary. For aught that appears, Thompson may not have been called upon as yet to advance any money at the time the case was commenced, for it may not have been demanded. In such a case, the whole of his compensation for advancing money may not have been earned. So that what was due him at the time the complaint was filed may have been only a small part of the profit he might make out of his contract. It was not alleged that Thompson had violated the contract. He was to put the business on the basis contemplated in his contract in a reasonable time. It was alleged that he had been in charge about ten months. It was not shown that this was an unreasonable time, nor can it be said that ten months is more than a reasonable time to put a failing business on a sound basis, when all of the money, to put it on that basis, was finally to come out of the business itself. The complaint was not drawn on the theory of recovering damages from Lofgren and Harris, nor are there allegations that would support such an action.

The complaint, therefore, did not state sufficient facts to authorize a court of equity to wrest the property from the possession of Thompson, take an accounting between him and the partners and turn the property over to a third party who claimed rights therein under a contract with which Thompson had nothing to do. This seems so plain that it is not necessary to say anything more about it, and the judgment is, therefore, affirmed. *Judgment affirmed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE GARRIGUES concur.